UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTINA M. REYES,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　　　Defendant. | Case No. C14-76-RSL-BAT<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Christina M. Reyes seeks review of the denial of her Disability Insurance Benefits application. She contends the ALJ erred in (1) failing to include fibromyalgia as a severe impairment at step two, (2) assessing her mental limitations, (3) assessing her handling and fingering limitations, (4) finding her capable of performing her past work as an insurance clerk at step four, and (5) finding her capable of transitioning to other work at step five. Dkt. 11 at 1-2. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further proceedings under sentence four of 42 U.S.C § 405(g).

## BACKGROUND

Ms. Reyes is currently 59 years old, graduated from high school and has completed two years of college, and has worked in retail customer service and as a medical transcriptionist and

REPORT AND RECOMMENDATION - 1

insurance administrative assistant.[1]  On January 4, 2011, she applied for benefits, alleging disability as of February 17, 2010.  Tr. 199-200.  Her application was denied initially and on reconsideration.  Tr. 125-31, 133-38.  The ALJ conducted a hearing on August 14, 2012 (Tr. 41-87), thereafter finding Ms. Reyes not disabled.  Tr. 19-35.  As the Appeals Council denied Ms. Reyes's request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1-6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:**  Ms. Reyes did not engaged in substantial gainful activity since February 17, 2010, the alleged onset date.

**Step two:**  Ms. Reyes's fracture of left wrist status post surgeries with reflex sympathetic dystrophy, right rotator cuff tear status post repair, right knee injury status post surgery, inflammatory arthritis, and depressive disorder are severe impairments.

**Step three:**  These impairments did not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity ("RFC"):**  Ms. Reyes has the RFC to perform sedentary work, except that she is limited to occasional stooping, kneeling, crouching, crawling, climbing ramps and stairs, overhead reaching on the right, and pushing and pulling with the left arm.  She can frequently balance.  She is restricted from climbing ladders, ropes, and scaffolds.  She can perform frequent handling and fingering with the left hand.  She should avoid concentrated exposure to extreme cold, extreme heat, vibration, respiratory irritants (fumes, odors, dusts, gases, and poor ventilation, etc.) and should avoid even moderate exposure to hazards such as working around machinery or heights.  She can engage in frequent contact with the public and sustain work activity at a no more than regular pace.  Due to headaches, she can frequently perform work requiring need for close attention to detail.

**Step four:**  Ms. Reyes can perform her past work as an insurance clerk as actually performed.

**Step five:**  In the alternative, there are other jobs — general receptionist and assignment clerk — that exist in significant numbers in the national economy that Ms. Reyes can perform.  She is not disabled.

---

[1] Tr. 211, 222.
[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

REPORT AND RECOMMENDATION - 2

Tr. 19-35.

# DISCUSSION

## A.    Fibromyalgia

Ms. Reyes contends the ALJ should have included fibromyalgia as a severe impairment at step two, because her treating rheumatologist, Philip Mease, M.D., found that she had 12 out of 18 tender points on examination. Dkt. 11 at 17 (citing Tr. 499). However, Dr. Mease did not indicate that Ms. Reyes had fibromyalgia. Instead, he suggested performing additional testing to determine whether she had an inflammatory arthritis, such as rheumatoid arthritis. Tr. 499. The ALJ included inflammatory arthritis as a severe impairment at step two. Tr. 21.

Because the record does not show that Dr. Mease believed Ms. Reyes's tender-point test results supported a fibromyalgia diagnosis, Ms. Reyes has failed to establish a step-two error. *See* 20 C.F.R. §§ 404.1508, 416.908 (providing that a step-two impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques, and established by medical evidence consisting of signs, symptoms, and laboratory findings"). Furthermore, to whatever extent that the ALJ could have inferred from Dr. Mease's findings that Ms. Reyes did meet the diagnostic criteria for fibromyalgia, she has not shown that including fibromyalgia at step two would have suggested any limitations not already accounted for by the ALJ's inclusion of inflammatory arthritis as a severe impairment. Thus, any error would be harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (failure to list impairment as severe at step two harmless where limitations considered at step four).

## B.    RFC Assessment as to Mental Impairments

Ms. Reyes contends the ALJ's RFC assessment is inconsistent with the ALJ's step three

REPORT AND RECOMMENDATION - 3

finding that she had "moderate" difficulties in maintaining "concentration, persistence, and pace." Dkt. 11 at 14 (citing Tr. 27).  This argument confuses the ALJ's step-three findings with an RFC assessment, contrary to the agency's internal guidance.  *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4 (Jul. 2, 1996) ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.").

Furthermore, the ALJ did include concentration, persistence, and pace limitations in his RFC assessment: he limited Ms. Reyes to a job requiring no more than "regular pace," and limited her to frequent (as opposed to constant) need for close attention to detail.  Tr. 28.  This opinion is consistent with the State agency opinion.  *See* Tr. 118.  Plaintiff has not identified other portions of the record establishing mental limitations not accounted for by the ALJ, and thus has failed to establish error.  Dkt. 11 at 14-15; Dkt. 16 at 9.

C.     **RFC Assessment as to Handling and Fingering**

Ms. Reyes argues the ALJ's finding that she can frequently handle and finger with her left hand is not supported by substantial evidence, because it is inconsistent with the contracture of the fingers of her left hand.  Dkt. 11 at 15.  Ms. Reyes points to medical evidence describing the contracture (Tr. 695), but that evidence is not connected to any medical opinion regarding Ms. Reyes's abilities.  As Ms. Reyes also notes (Dkt. 11 at 16), the ALJ discussed her contracture and the improvement that she experienced after physical therapy and massage.  Tr. 30.  Although Ms. Reyes argues that the ALJ's RFC assessment was not reconciled with the medical evidence related to her contracture, she has not pointed to any evidence establishing that she did not retain the manipulative ability indicated by the ALJ, and thus has failed to establish

REPORT AND RECOMMENDATION - 4

that such reconciliation was necessary.

**D.     Step Four**

Ms. Reyes described her past work in an agency work history report to include a job as an insurance clerk as involving writing, typing, and handling small objects for 7.5 hours per eight-hour workday.  Tr. 237.  This amount of manipulation exceeds the ALJ's RFC assessment, which limited Ms. Reyes to "frequent" (up to two-thirds of a workday (SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983)) handling and fingering with her left hand.  Tr. 28.  Thus, according to Ms. Reyes, the ALJ erred in finding at step four that she could perform her past work as an insurance clerk as actually performed.

The Commissioner contends that the ALJ's step-four finding is saved by the testimony of the vocational expert ("VE"), who testified that a hypothetical person with Ms. Reyes's RFC could perform the job of insurance clerk.  Tr. 47, 84.  The VE's testimony indicates that he reviewed Ms. Reyes's written work history report when identifying the corresponding job definitions from the Dictionary of Occupational Titles ("DOT"), but he did not explicitly address her description of the writing, typing, and handling requirements of that job.  Tr. 47.  Nonetheless, the Commissioner argues that the ALJ was entitled to rely on the VE's testimony that a person with Ms. Reyes's RFC could perform her past work as an insurance clerk.

The Commissioner also argues that there is no inherent conflict between the ALJ's RFC assessment and Ms. Reyes's description of her work, because she could have written, typed, and handled objects with her right (dominant) hand.  Dkt. 15 at 3.  The Commissioner's argument could apply intuitively to writing and handling, but typing of the sort described by Ms. Reyes (Tr. 237) is unlikely to be a one-handed activity.  Thus, the Court concludes that there is a conflict between Ms. Reyes's past work as an insurance clerk and the left-hand limitations found

REPORT AND RECOMMENDATION - 5

by the ALJ, and that this conflict was not identified or explained by the VE's testimony, which, with its references to the DOT, suggests that it was intended to address Ms. Reyes's work as generally performed.[4]  Accordingly, the ALJ's step-four finding is not supported by substantial evidence and is erroneous.

**E.     Step Five**

The ALJ entered alternative step-five findings, indicating that Ms. Reyes could also adjust to work as a general receptionist.  Tr. 34.[5]  The ALJ referenced VE testimony that Ms. Reyes had acquired "clerical skills" that were transferable to the receptionist position, and that "little, if any" vocational adjustment would be required.  Tr. 34 (referencing Tr. 81, 84-85).  Ms. Reyes argues that the VE's testimony was not sufficiently specific as to her transferable clerical skills or to whether vocational adjustment would be required, and that this error is harmful in light of her "advanced age" under Medical-Vocational Rule 201.00(f).[6]  20 C.F.R. Pt. 404, Subpt. P, App. 2, Tbl. 1, § 201.00(f).

The Ninth Circuit requires ALJs to identify specific transferable work skills, when

---

[4] Ms. Reyes argues in the alternative that the sitting requirements of her past work as an insurance clerk are inconsistent with the ALJ's RFC assessment.  The ALJ placed no sitting restrictions on Ms. Reyes, however; simply noting that she can perform sedentary work does not imply that she can sit for no more than six hours per day, even though a sedentary job requires the ability to sit for six hours per day.  Thus, there is no conflict between the ALJ's RFC assessment and Ms. Reyes's description of her past work as an insurance clerk.  The Court will not address Ms. Reyes's argument, raised for the first time on Reply (Dkt. 16 at 5-6), that the ALJ's RFC assessment is inconsistent with the State agency opinion regarding sitting limitations.  *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) ("[A]rguments not raised by a party in an opening brief are waived.")

[5] The ALJ also found that Ms. Reyes could adjust to work as an assignment clerk, but the Commissioner concedes that this finding was erroneous.  Dkt. 15 at 5 n.1.

[6] She also argues that the ALJ erred in finding that she could perform the receptionist job, because such a job requires more contact with the public than her RFC assessment allows.  This argument is not based on any job requirement listed in the DOT or elsewhere, but entirely on Ms. Reyes's speculation about how receptionist jobs are structured.  Dkt. 16 at 8-9.  As such, Ms. Reyes has failed to establish an error in this respect.

REPORT AND RECOMMENDATION - 6

finding at step five that a claimant can transition to other semi-skilled or skilled work, and to enter findings as to whether the other work would require vocational adjustment. *See Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1223-26 (9th Cir. 2009) (interpreting SSR 82-41, 1982 WL 31389 (Jan. 1, 1982)). The Commissioner argues that the VE's reference to "clerical skills" was sufficiently detailed and that the VE did not need to specifically address the type of adjustment contemplated, because his testimony that "little, if any" vocational adjustment would be required covers all types of adjustment. Dkt. 15 at 6.

The VE's testimony identifying "clerical skills" is insufficiently specific as to the type of transferable skills obtained: "clerical skills" is a category of skills, and a reference to this broad category fails to support the ALJ's finding that such skills were transferable. Furthermore, although the ALJ wrote that the VE testified that Ms. Reyes's past work required "clerical skills, such as answering phones, taking messages, using a computer/typing, sending and receiving correspondence, filing records and documents, and communicating with others," in reality, the VE did not provide any of those particular examples. *Compare* Tr. 33 *with* Tr. 81-85. The VE's generalized testimony does not satisfy the ALJ's obligation under SSR 82-41 to identify specific transferable skills. *See, e.g.*, *Casillas v. Astrue*, 2010 WL 891277, at *3 (C.D. Cal. Mar. 10, 2010) (involving VE testimony describing specific "clerical skills" that transfer). Accordingly, the ALJ's step-five findings are insufficient, and thus do not cure the step-four error.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and **REMANDED** for additional proceedings. On remand, the ALJ shall reconsider his step-four and step-five findings and obtain additional VE testimony, if necessary.

A proposed order accompanies this Report and Recommendation. Any objection to this

1 | Report and Recommendation must be filed and served no later than **August 4, 2014.**  If no
2 | objections are filed, the Clerk shall noted the matter for **August 5, 2014**  as ready for the Court's
3 | consideration.  If objections are filed, any response is due within 14 days after being served with
4 | the objections.  A party filing an objection must note the matter for the Court's consideration 14
5 | days from the date the objection is filed and served.  Objections and responses shall not exceed
6 | twelve pages.  The failure to timely object may affect the right to appeal.

DATED this 21st day of July, 2014.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 8